## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WEST END 38, LLLP, AND
OLIVE STREET DEVELOPMENT CO., LLC,

*Plaintiffs*,

v.

STINKER STORES, INC.,
STINKER STORES CO, INC.,
JOSHNIK CO LLLP,
BRADLEY PETROLEUM, INC.,
BPI, INCORPORATED, AND
7403 WEST 38TH AVENUE LLC,

*Defendants*.

---

## COMPLAINT

---

Plaintiffs West End 38, LLLP ("West End") and Olive Street Development Co., LLC ("Olive") (collectively, "Plaintiffs") file this complaint against Stinker Stores, Inc. and Stinker Stores CO, Inc. (collectively, "Stinker"); Joshnik CO LLLP ("Joshnik"); and Bradley Petroleum, Inc., BPI, Incorporated, and 7403 West 38th Avenue LLC (collectively, "Bradley"); and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action against Stinker and Joshnik for declaratory and injunctive relief, civil penalties, and costs and fees, under the citizen suit provision of the Solid Waste Disposal Act, amended as the Resource Conservation and Recovery Act, 42 U.S.C. § 6901,

*et seq.* (RCRA), specifically Section 7002(a)(1)(A) of RCRA, 42 U.S.C. § 6972(a)(1)(A).  This action is brought to enforce ongoing violations of RCRA, Section 7002(a)(1)(A).

2.     Plaintiffs also bring supplemental state law claims against all defendants – Stinker, Joshnik, and Bradley (collectively, "Defendants") – for declaratory and injunctive relief and damages for trespass, nuisance, negligence, and negligence per se under Colorado law for Defendants' continuing trespass on Plaintiffs' property, for causing a continuing nuisance on Plaintiffs' property, and for negligently polluting the soil and groundwater at Plaintiffs' property.

3.     This action is regarding a gas station located at 7403 W. 38th Avenue in Wheat Ridge, Colorado ("the Bradley Site"), previously owned and operated by either Bradley Petroleum, Inc. (which has since changed its name to BPI, Incorporated) or 7403 West 38th Avenue LLC, and currently owned and operated by Stinker Stores, Inc., Stinker Stores CO, Inc., and/or Joshnik.  The Bradley Site is the site of petroleum leaks from underground storage tanks ("USTs") that have contaminated and continue to contaminate the groundwater and soil at the Bradley Site and neighboring properties, including the abutting property serving as right-of-way owned by Plaintiff Olive (the "Olive ROW") and the property at 7333 West 38th Avenue owned by Plaintiff West End (the "West End Property") (collectively, "the West End Properties"), each of which is north of, and hydraulically downgradient from, the Bradley Site.

4.     *Violations of RCRA*:  Despite undisputed evidence demonstrating that petroleum contamination from the Bradley Site has migrated and continues to migrate offsite and contaminate soil and groundwater at the West End Properties, Stinker and Joshnik have failed to stop ongoing releases of petroleum, failed to adequately characterize or remediate the contamination, and failed

to stop the contamination from migrating offsite onto the West End Properties, failures which represent numerous violations of RCRA and its implementing regulations.

5.      *Violations of Colorado Law*:   Despite undisputed evidence demonstrating that petroleum contamination from the Bradley Site is migrating offsite and contaminating soil and groundwater at the West End Properties, and that all Defendants are aware of such ongoing contamination, all Defendants have failed to stop releases of petroleum, failed to adequately characterize or remediate the contamination, and failed to stop the contamination from migrating offsite and harming the West End Properties, actions which constitute trespass, nuisance, negligence, and negligence per se under Colorado law.

6.      An order by this Court requiring, among other things, that Defendants cease and clean up their pollution and compensate Plaintiffs for the damage incurred from Defendants' actions will redress Plaintiffs' injuries.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the federal claims set forth in this complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and under 28 U.S.C. § 1331, which confers jurisdiction upon a matter arising out of federal law.   The state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has jurisdiction over each of the Defendants in that each of them have purposely availed themselves of Colorado laws by, among other things, conducting business, seeking permits and maintaining registrations to install and operate petroleum underground storage

tanks, operating such tanks, and operating and owning the contaminated Bradley Site within the district of this court.  Each Defendant is also registered to do business in Colorado.

9.  This Court has jurisdiction over Plaintiffs' state law claims against all Defendants pursuant to 28 U.S.C. § 1367, which grants federal district courts supplemental jurisdiction "over all other claims that are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Plaintiffs' state law claims against all Defendants arise from the exact same facts as Plaintiffs' federal claims against Stinker and Joshnik regarding the same Bradley Site and same ongoing contamination, and are therefore part of the same case or controversy.

10.  Further, Plaintiffs' state law claims against Bradley are properly joined with Plaintiffs' claims against Stinker and Joshnik pursuant to Fed. R. Civ. P. 20(a)(2), because Plaintiffs' state law claims arise out of the same ongoing contamination from USTs at the same Bradley Site and contain both questions of law and fact that are common to the RCRA and state law claims against Stinker and Joshnik.  In addition to Stinker and Joshnik, Bradley has operational control over the Bradley Site and the ongoing contamination is caused by unlawful acts or omissions of all Defendants.  The legal issues and facts that form the basis of Plaintiffs' claims against Stinker and Joshnik form the basis of Plaintiffs' state law claims against Bradley—including but not limited to whether the contamination at the Bradley Site and its migration onto Plaintiffs' properties is unlawful, as well as the factual evidence underlying those issues.

11.  Venue is properly vested in this Court under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b), in that all of the events giving rise to Plaintiffs' claims occurred in this District and the Defendants are subject to personal jurisdiction in this District.  Specifically,

the Defendants have owned or own or operate within this District petroleum storage tanks and related facilities for the handling and storage of petroleum and the alleged violations occurred and continue to occur within this District.

## PARTIES

12.     Plaintiff Olive is a limited liability limited company organized in the state of Colorado with its principal place of business in Denver, Colorado.  Olive owns the Olive ROW.

13.     Plaintiff West End is a limited liability limited partnership organized in the state of Colorado with its principal place of business in Denver, Colorado.  West End owns the West End Property.  West End and Olive are owned and managed by the same individuals.

14.     Defendant Bradley Petroleum, Inc. or Defendant 7403 West 38th Avenue LLC, both corporations registered in the state of Colorado, either owned or operated the gas station and/or property at 7403 W. 38th Avenue in Wheat Ridge, Colorado from at least 2003 until February 8, 2017.  In March 2017, Bradley Petroleum, Inc. changed its name to BPI, Incorporated, but submissions to OPS regarding the Bradley Site remain under the name Bradley Petroleum, Inc.

15.     Until February 8, 2017, the Bradley Site was operated by Bradley, and a Bradley gas station operated at the Bradley Site.  Since February 8, 2017, Bradley has continued to be involved with operations at the Bradley Site, including but not limited to, operating an ongoing corrective action at the Bradley Site.

16.     Upon information and belief, either Stinker Stores, Inc., a corporation organized in the state of Idaho, or Stinker Stores CO, Inc., a corporation organized in the state of Wyoming, is the current owner and operator of the gas station located at 7403 W. 38th Avenue in Wheat Ridge, Colorado.

17.     Stinker acquired the gas station and convenience store at the Bradley Site in February 2017 and currently operates a Little Stinker gas station and convenience store at that location.   Upon information and belief, Stinker has operational control over the Bradley Site and is operating USTs on the Site, and may be an owner of the Site.

18.     Joshnik is a limited liability limited partnership organized in the state of Wyoming with its principal office address in Casper, Wyoming and its principal mailing address in Boise, Idaho.  Joshnik, upon information and belief, is an affiliate or related corporate entity of Stinker, and is a current property owner of the contaminated Bradley Site.  Joshnik also may participate in operating the Little Stinker gas station at the Bradley Site.

## NOTICE UNDER RCRA

19.     Section 7002(a)(1)(A) of RCRA, 42 U.S.C. § 6972(a)(1)(A), allows citizens to bring suit "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter . . . ."

20.     On February 27, 2020, Plaintiffs gave notice of the violations and their intent to file suit to Stinker, Joshnik, their registered agents, the United States Environmental Protection Agency ("EPA"), EPA Region VIII, the United States Attorney General, the Colorado Attorney General, the Colorado Department of Public Health and the Environment ("CDPHE"), the Colorado Division of Oil and Public Safety ("OPS"), and the Colorado Hazardous Materials and Waste Management Division, as required by Section 7002(b) of RCRA, 42 U.S.C. § 6972(b)(1)(A).  A copy of this Notice is attached as Exhibit A and incorporated by reference herein.  Registered mail receipts and United States Postal Service tracking information document that the notice letter was

received by Stinker and Joshnik by March 2, 2020, and other entities to whom the letter was sent received it on or before April 7, 2020. *See* Affidavit of Service in Exhibit B.  In addition, counsel for Plaintiffs e-mailed the notice letter to representatives for Defendants on February 27, 2020.

21.     More than sixty days have passed since Plaintiffs provided their notice of intent to file suit to Stinker, Joshnik, and the others who require notice under Section 7002(b) of RCRA, 42 U.S.C. § 6972(b)(1)(A).   Neither the EPA nor the State of Colorado have commenced or are diligently prosecuting a civil or criminal action in a state or federal court to stop the continuing violations of RCRA alleged in Plaintiffs' notice of intent letter.   Nor is the EPA, under the Comprehensive Environmental Response, Compensation and Liability Act, engaged in any of the actions described in 42 U.S.C. § 6972(b)(2)(B) with respect to the conditions described herein.

## FACTUAL BACKGROUND

### Releases of Petroleum at the Bradley Site

22.     Multiple releases of petroleum from the Bradley Site have occurred and have contaminated nearby properties, including the Olive ROW, which is located immediately adjacent to and hydraulically downgradient of the Bradley Site, and the West End Property, which is adjacent to the Olive ROW to the north and also hydraulically downgradient of the Bradley Site.

23.     A release attributed to the Bradley Site in 2003 caused petroleum-hydrocarbon vapors in the west wing basement of an office building at 3895 Upham Street in Wheat Ridge, Colorado, 500 feet north of the Bradley Site and even further downgradient of the Bradley Site than the West End Property.  OPS and its consultant, Paragon Consulting Group, Inc. ("Paragon"), investigated and identified elevated concentrations of petroleum constituents in groundwater samples collected from three monitoring wells in the area on March 28, 2003.   Benzene

concentrations in all three wells and toluene concentrations in two wells exceeded the Colorado Basic Standards for Groundwater.  OPS and Paragon concluded that a release of petroleum at the Bradley Site was the likely source of groundwater contamination.  OPS required Bradley to take over the monitoring, operation, and maintenance of a sub-slab depressurization system at the Upham Street property to reduce the vapors and issued a Storage Tank Report and Release Tracking Form for the Bradley Site (Leak Event ID# 9145).

24.    Another release from the Bradley Site was reported to OPS in 2006 after an annual leak and detection test indicated pressure loss associated with the premium-unleaded dispenser line.  Bradley shut down the affected line and excavated hydrocarbon-impacted soil in the associated trench.  Bradley hired Eagle Environmental Consulting, Inc. ("Eagle") to sample the area.  Based on Eagle's sampling results, a confirmed release of petroleum was reported to OPS on March 3, 2006.  In response, Eagle performed site characterization activities for Bradley, including installing four monitoring wells at the site (MW-1 through MW-4) and obtaining access to three existing monitoring wells formerly installed by Paragon north and hydraulically downgradient.

25.    In August 2006, Eagle excavated approximately 176 cubic yards of petroleum hydrocarbon-impacted soil from the Bradley Site beneath the petroleum dispenser islands and product lines.  OPS required additional testing to further characterize the site in 2008, including installation of monitoring wells and soil borings to further define the dissolved benzene and methyl tert-butyl ether (MTBE) impacts beneath the site.

26.    OPS issued a Final Request for Corrective Action Plan ("CAP") for the Bradley Site in December 2007, and Bradley submitted an initial CAP to OPS on January 29, 2008.  The

initial CAP outlined a total fluid recovery remedial approach to reduce petroleum constituent concentrations in groundwater at the site below the state groundwater limits, the state-wide risk-based screening levels ("RBSL").  Upon information and belief, the CAP did not include offsite characterization or remediation.

27.     Bradley was unable to achieve the state-wide RBSL for benzene, which is 0.005 mg/L, so OPS ultimately set a more lenient site-based benzene cleanup target for the Bradley Site, called a site-specific target level ("SSTL"), of 0.015 mg/L.

28.     From 2008 until the present, Bradley allegedly employed a series of remedial approaches (first total fluid recovery, then air sparge/soil vapor extraction, then complete granulated activated carbon injections, and finally bioremediation) at the Bradley Site, but each approach has been inadequate and failed to show that benzene concentrations remain consistently below the SSTL onsite (at MW-1) and RBSL offsite on the West End Properties (at monitoring well VB-3).  Specifically, groundwater monitoring reports Eagle submitted on behalf of Bradley to OPS quarterly in 2019 indicate that benzene levels were above the SSTL at MW-1 in three out of four quarters of 2019, and that benzene levels were above the RBSL at VB-3 in two out of four quarters of 2019.

29.     Upon information and belief, Eagle has concluded that petroleum contamination has migrated and continues to migrate from the Bradley Site onto the West End Properties.  In Eagle's quarterly reports, Eagle concluded the groundwater data indicated that the dissolved petroleum hydrocarbon plume emanating from the Bradley Site north and offsite into VB-3 indicates a groundwater exposure pathway.  Eagle has identified the West End Properties as a point

of exposure at risk from contamination migrating from the Bradley Site and stated that contamination from the Bradley Site has impacted properties to the north.

30.     In 2020, Bradley is attempting yet another remediation approach: in-situ chemical oxidation injections at MW-1 and at VB-3 on the West End Properties in an attempt to address the ongoing migration of contamination.

31.     Upon information and belief, Stinker and Joshnik were aware of the existing contamination at the Bradley Site when they took over ownership and control of the site.  Stinker and Joshnik now own and operate a gas station and USTs on the Bradley Site, but neither Stinker nor Joshnik have addressed the contamination at the Bradley Site, sought to prevent its migration offsite, or conducted investigations or remediation activities offsite.

32.     Despite the change in ownership and operational control of the gas station and convenience store, Bradley remains substantially involved with the Bradley Site and is the entity responsible for remedial operations at the Site to address petroleum releases under OPS Leak Event ID No. 9145.  For instance, Bradley, through its consultant Eagle, controls the corrective action plan at the Site, including submitting quarterly monitoring and remediation reports to OPS regarding remediation activities at the Site.

33.     Stinker, Joshnik, and Bradley have failed to stop releases of petroleum, appropriately remediate releases, characterize the nature and extent of groundwater and soil contamination both onsite and offsite, and implement effective corrective actions onsite and on the West End Properties.

34.     As a result, Stinker, Joshnik, and Bradley continue to unlawfully release petroleum into the surrounding environment, including the West End Properties.

**Contaminated Soil at the West End Property**

35.     West End acquired title to the property located at 7333 West 38th Avenue in May 2018 and began redeveloping the property into residences.

36.     Prior to its acquisition, West End identified multiple monitoring wells in the area associated with various investigations tied to the Bradley Site.   West End commissioned the preparation of a Phase I Environmental Site Assessment ("ESA") and a limited Phase II ESA by Dominion Due Diligence.   These reports did not reveal any contaminants in soil and groundwater above OPS regulatory limits.

37.     In June 2018, shortly after West End started excavation of the property for site redevelopment, contractors encountered petroleum-impacted soil.   West End's environmental consultant, Higgins and Associates, LLC ("Higgins"), took soil samples and notified OPS.   Results indicated multiple soil samples contained benzene above the RBSL for benzene in soil of 0.26 mg/kg in violation of state standards.   However, the extent of contamination on the property was uncertain.

38.     On a telephone conference in June between OPS staff, West End, Eagle, and Higgins, Robert Herbert of OPS concluded that the petroleum impacted soils on the West End Property were the result of the petroleum contamination plume emanating north in groundwater from the Bradley Site.

39.     Throughout the construction activities in late June and July 2018, West End's contractors continued to encounter and excavate petroleum-impacted soils, which were removed, tested, and properly disposed of offsite.   Soil sampling results indicated that at least eleven soil samples exceeded the RBSL for benzene.

40.     Significant soil contamination from the Bradley Site remains on the West End Properties.  Higgins' preliminary assessment estimated that approximately 7,797 cubic yards of petroleum-contaminated soil remain onsite.

41.     To protect residents at the redeveloped property from hydrocarbon vapors from the contaminated soil and groundwater, West End installed a vapor barrier under the new building it constructed at the West End Property.

42.     Defendants' contamination of soil and groundwater has caused significant injuries to Plaintiffs.  West End has incurred substantial additional costs by having to conduct extensive soil testing, employ proper handling procedures during excavation, and installing the vapor barrier to protect future residents.  All of these measures also caused substantial construction delays, which in turn increased West End's costs dramatically.  Further, the significant amount of contaminated soil remaining onsite has reduced the value of West End Properties.

## STATUTORY AND REGULATORY BACKGROUND

43.     RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.  42 U.S.C. § 6902.  Among other provisions, RCRA prohibits open dumping and requires that all solid waste be disposed of in compliance with section 4003, which sets forth the minimum requirements for state solid waste plans.  42 U.S.C. §§ 6944(b), 6945(a).

44.     RCRA defines the term "solid waste" to include "any . . . discarded material."  42 U.S.C. § 6903(27).  The term "discarded material" is defined as any material that is "[a]bandoned."  40 C.F.R. § 261.2(a)(2)(i)(A).  Under RCRA, "[m]aterials are solid waste if they are abandoned

by being [d]isposed of." *Id.* § 261.2(b)(1).  The term "disposal" includes the "leaking . . . of any solid waste or hazardous waste into or on any land or water . . . ." 42 U.S.C. § 6903(3).

45.     Petroleum contaminated media and debris from USTs are RCRA-regulated solid wastes.  40 C.F.R. § 261.4(b)(10); *see also United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1145, 1159-60 (D. Colo. 1998) ("[L]eaching of hazardous waste into the groundwater from this soil constitutes continuing disposal of hazardous waste."); *United States v. Hill*, 1998 U.S. Dist. LEXIS 7894 at *9 (N.D.N.Y. May 20, 1998) ("[L]eakage of gasoline from an underground storage tank into the surrounding soil constitutes disposal of a solid waste under RCRA."); *see Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 482 (D. Minn. 1995) ("spilt or leaked petroleum resulting from commercial operations satisfies RCRA's definition of 'solid waste.'").

46.     RCRA's citizen suit provision authorizes Plaintiffs to seek relief against Little Stinker and Joshnik pursuant to Section 7002(a)(1)(A), which authorizes a citizen suit against "any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter . . . ."  42 U.S.C. § 6972(a)(1)(A).

47.     Subchapter IX of RCRA regulates USTs.  42 U.S.C. § 6991-6991(m).  Pursuant to statutory authority, the EPA has promulgated a series of regulations that include provisions relating to UST registration, leak detection, notification, and cleanup requirements.  40 C.F.R. Part 280. The EPA is empowered to delegate UST program administration to a state if that state's regulatory requirements are at least as stringent as their federal counterparts.  42 U.S.C. §§ 6991c, 6991g. The EPA has done so for the state of Colorado, and OPS is the state agency authorized to implement Colorado's storage tank program.  40 C.F.R. § 282.55(a) (effective July 19, 2019); *see also*

Colorado; Final Approval of State Underground Storage Tank Program Revisions and Codification, 84 Fed. Reg. 22,727 (May 20, 2019).  Colorado regulates USTs pursuant to C.R.S. § 8-20.5-101, *et seq.*, and 7 Colo. Code Regs. 1101-14.

48.     OPS sets RBSLs, which are risk-based corrective action target levels, for chemicals of concern in soil and groundwater.  *See* 7 Colo. Code Regs. 1101-14, § 1-5.  OPS sometimes sets SSTLs, which are risk-based remedial action target levels for chemicals of concern developed for a particular site that determine the cleanup goals for that site.  *See id.*

49.     RCRA's 1984 Hazardous and Solid Waste Amendments directed the EPA to develop regulations governing landfill design and operational criteria that are protective of human health and the environment, regulations known as RCRA Subtitle D.  These amendments also empower the EPA to approve state regulatory schemes for the management of solid waste so long as they meet the minimum requirements of Subtitle D.  42 U.S.C. § 6943.  Colorado operates an approved state program pursuant to the Solid Waste Act, C.R.S. § 30-20-100.5, *et seq.*, and its implementing regulations, including 6 Colo. Code Regs. 1007.2 Part 1.

50.     Violations of Colorado's EPA-approved RCRA programs, including its storage tank regulations and its solid waste regulations, constitute violations of RCRA, and RCRA's citizen suit provision may be used to enforce such violations.  *See, e.g.*, *Sanchez v. Esso Standard Oil Co.,* 572 F.3d 1 (1st Cir. 2009) (citizen suit to enforce Puerto Rico's federally-approved UST program); *see also Sierra Club v. Chem. Handling Corp.*, 824 F. Supp. 195, 198 (D. Colo. 1993) (citizen suit to enforce Colorado's federally-approved hazardous waste program).

51.     Stinker and Joshnik are "persons" subject to the citizen suit provision of RCRA, 42 U.S.C. § 6972.  42 U.S.C. § 6903(15).

52.     Stinker and Joshnik are current owners and/or operators of a facility and property regulated by RCRA with ongoing disposal of solid waste in violation of RCRA, and therefore, Stinker and Joshnik are liable for RCRA violations.  *See, e.g., City of Toledo v. Beazer Materials and Services*, 833 F. Supp. 646, 656 (N.D. Ohio 1993).

## CAUSES OF ACTION

### COUNT I – RCRA CITIZEN SUIT, 42 U.S.C. § 6972(a)(1)(A)
### (Against Defendants Stinker and Joshnik)

53.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs of this Complaint and the attachments to this Complaint.

54.     As owners and operators of the Bradley Site, Stinker and Joshnik have caused and continue to cause release of petroleum contamination at the Bradley Site and onto adjacent properties, including the West End Properties—ongoing activities which constitute unlawful open dumping under RCRA.  *See* 42 U.S.C. §§ 6944(b), 6945(a).

55.     Stinker and Joshnik are responsible for ongoing violations of the following standards, regulations, conditions, requirements, and prohibitions under RCRA regarding the contamination on the Bradley Site and adjacent properties:

### Violations of RCRA's Underground Storage Tank Requirements

56.     Unauthorized releases of solid waste from USTs are ongoing at the Bradley Site and at adjacent properties in violation of RCRA.  Those releases continue to contaminate the soil and groundwater at the Bradley Site and at adjacent properties.

57.     Stinker and Joshnik have failed to comply with RCRA and Colorado UST regulations, such as Article 5, Section 5-1's requirements for responses to confirmed releases, including but not limited to the requirements to "[t]ake action to prevent any further release into

15

the environment" and remedy "hazardous posed by contaminated media that are excavated or exposed as a result of abatement activities."  7 Colo. Code Regs. 1101-14, § 5-1-2; *see also* 40 C.F.R. § 280.61(b) (requiring responsible parties to take immediate action to prevent any further release of petroleum into the environment).

58.     Stinker and Joshnik have failed to comply with RCRA and Colorado UST Regulations, such as Article 5, Section 5-2's requirements for site characterization in response to releases, including adequately defining the "extent of the source area(s) of the release" and "the distribution of contamination in the subsurface," particularly at the Olive ROW and the West End Property.  7 Colo. Code Regs. 1101-14, § 5-2;  *see also* 40 C.F.R. § 280.51–52 (requiring proper investigation of off-site impacts set forth in and the release investigation); 40 C.F.R. § 280.65 (requiring investigation of the full extent and location of soils contaminated by the release and the presence and concentrations of dissolved product contamination in groundwater by conducting investigations of the release, the release site, and the surrounding area possibly affected if there is evidence that groundwater wells have been impacted by the release).

59.     Stinker and Joshnik have failed to meet RCRA and Colorado UST Regulations such as Article 5, Section 5-3's requirements for corrective action in response to releases, including but not limited to implementing a timely and adequate corrective action plan to remediate the contamination at the Olive ROW and the West End Property.  7 Colo. Code Regs. 1101-14, § 5-3(b)(1) (requiring, *inter alia*, that an "owner/operator shall . . . identify targeted treatment areas"); *see also* RCRA, Part 280, Subpart F (including requirements for adequate corrective action for UST systems containing petroleum, including requirements to perform adequate site characterization (40 C.F.R. § 280.63), properly investigate the surrounding area to determine the

extent of the contamination (40 C.F.R. § 280.65), and develop a CAP that provides for adequate protection of human health and the environment (40 C.F.R. § 280.66)).

60.     Stinker and Joshnik have been and continue to be in violation of Colorado's regulatory standards implementing RCRA with respect to the basic standards for groundwater because benzene in groundwater at the Bradley Site continues to exceed the SSTL, and benzene migrating from the Bradley Site continues to cause groundwater exceedances of the RBSL at the West End Properties.  *See* 7 Colo. Code Regs. 1101-14, § 5-2, tbl. 5-1.  Such exceedances violate Colorado's groundwater standards.  *See* CDPHE Basic Standards for Groundwater, Colo. Code Regs. 1002-41, § 41.5.

61.     Stinker and Joshnik have been and continue to be in violation of Colorado's regulatory standards implementing RCRA with respect to the basic standards for soil by continuing to cause benzene levels at the West End Property to exceed the RBSL for benzene in subsurface soil.  *See* 7 Colo. Code Regs. 1101-14, § 5-2, tbl. 5-1.

62.     These violations of RCRA, UST Regulations, and Colorado groundwater and soil standards are ongoing and have not been corrected or remediated, and therefore, owners and operators Stinker and Joshnik continue to be "in violation of" RCRA.  42 U.S.C. § 6972(a)(1)(A).

**Violations of RCRA and Colorado Solid Waste Regulations**

63.     Stinker and Joshnik are disposing of solid waste at the Bradley Site in violation of RCRA and Colorado law governing solid waste disposal and solid waste disposal facilities and sites.

64.     Stinker and Joshnik have violated and continue to violate RCRA and Colorado's Solid Waste Act, C.R.S. § 30-20-100.5, *et seq.*, and its implementing regulations, 6 Colo. Code

Regs. 1007.2 Part 1, including Section 1.3.3's prohibition on the operation of a solid waste disposal facility without a certificate of designation from CDPHE.  6 Colo. Code Regs. 1007-2 pt. 1, § 1.3.3; *see also* 42 U.S.C. §§ 6943(a)(2), 6944(b) (prohibiting open dumping and solid waste disposal except in approved sanitary landfills or as utilized for resource recovery); § 6945 (prohibiting open dumping).  The Bradley Site is not a designated solid waste disposal site with a certification from CDPHE.  Without such certification, there cannot be disposal of solid waste – like petroleum – at the site.  Yet, evidence of petroleum releases to soil and groundwater onsite and offsite demonstrate that there is ongoing disposal of solid waste at the Bradley Site.

65.    Stinker and Joshnik have violated and continue to violate numerous minimum standards for solid waste disposal sites and facilities contained in RCRA regulations and Section 2 of Colorado's Solid Waste Regulations.  6 Colo. Code Regs. 1007-2 pt. 1, § 2; *see also* 40 C.F.R. §§ 257.1-257.4, 258.1 *et seq.*  In violation of RCRA, solid waste – petroleum – has been disposed of and continues to remain onsite without implementation of minimum standards for the management of such waste including, but not limited to:  implementation of a program for detection and prevention of the disposal of polychlorinated biphenyl waste and hazardous waste (§ 2.1.2(B); *see also* 40 C.F.R. § 258.20), maintenance of an approved waste characterization and disposal plan (6 Colo. Code Regs. 1007-2 pt. 1, § 2.1.2(C)), elimination of nuisance conditions at or beyond the site boundary (§ 2.1.3), prohibition on water pollution (§§ 2.1.4, 2.1.15, 2.1.17; *see also* 40 C.F.R. §§ 257.3-4, 258.27, 258.50-58), and proper implementation of adequate measures to prevent waste material and debris from leaving the site (6 Colo. Code Regs. 1007-2 pt. 1, § 2.1.7).

66.     These violations of RCRA and Colorado's Solid Waste Act and its regulations are ongoing, and therefore, Stinker and Joshnik continue to be "in violation of" RCRA.  42 U.S.C. § 6972(a)(1)(A).

## SECOND CAUSE OF ACTION - TRESPASS
### (Against All Defendants)

67.     Plaintiffs incorporate each allegation of the preceding paragraphs in this Complaint.

68.     Defendants' ongoing releases of petroleum contamination constitute a continuing trespass in violation of Colorado law that interferes with Plaintiffs' use and enjoyment of the West End Properties.

69.     Under Colorado law, "[t]he elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property." *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003).  The "intrusion can occur when an actor intentionally enters land possessed by someone else, or when an actor causes something else to enter the land." *Id*.

70.     Defendants' ongoing releases of petroleum have caused contamination and damage to the West End Properties that constitute a physical intrusion without Plaintiffs' permission. Defendants' releases of petroleum have resulted in benzene contaminant concentrations in groundwater and soil on the West End Properties that exceed applicable state and federal standards.

71.     Defendants' intrusion on the West End Properties is intentional and willful.  Despite knowing and conceding that petroleum contamination is migrating from the Bradley Site causing contamination at the West End Properties, and despite being directed by OPS to remediate, remove, and prevent further contamination, Bradley has failed to abate the migration of its contamination onto the West End Properties and remediate and remove the contamination.  Likewise, upon

acquiring ownership of the Bradley Site and operating a facility on the Site, Stinker and Joshnik have failed to remediate and remove the contamination and to abate the migration of its contamination onto the West End Properties.  By causing and allowing contamination to migrate onto Plaintiffs' properties, Defendants intentionally intruded on the West End Properties, and that unlawful trespass is ongoing.

72.     Defendants' trespass in the form ongoing contamination of the soil and groundwater at the West End Properties has caused damages to Plaintiffs which include, but are not limited to, (a) restricted use of the properties, (b) delays in the development of the West End Properties, (c) requiring remediation, restoration, mitigation, and monitoring, and (d) diminution in value of the properties.

### THIRD CAUSE OF ACTION – NUISANCE
### (Against All Defendants)

73.     Plaintiffs incorporate each allegation of the preceding paragraphs in this Complaint.

74.     Defendants' ongoing releases of petroleum contamination constitute a continuing nuisance in violation of Colorado law.

75.     A claim for nuisance is "predicated upon a substantial invasion of an individual's interest in the use and enjoyment of his property."  *Hoery,* 64 P.3d at 218.

76.     Under Colorado law, "the ongoing presence and continued migration of toxic chemicals originally emanating" from a site constitute a continuing nuisance.  *Id.* at 221-22. Specifically, the "failure of the [polluter] to remove the pollution from [the contaminated] property which it wrongfully placed there constitutes a continuing property invasion for the entire time the contamination remains."  *Id.* at 222.

77.     Defendants' ongoing releases of petroleum have contaminated and continue to contaminate the soil and groundwater at the West End Properties and constitute an intentional, substantial invasion of Plaintiffs' use and enjoyment of the West End Properties.  Defendants contamination of the soil and groundwater at the West End Properties is a direct and proximate cause of damages to Plaintiffs which include, but are not limited to, (a) restricted use of the properties, (b) delays in the development of the West End site, (c) requiring remediation, restoration, mitigation, and monitoring, and (d) diminution in value of the properties.

## FOURTH CAUSE OF ACTION - NEGLIGENCE
### (Against All Defendants)

78.     Plaintiffs incorporate each allegation of the preceding paragraphs in this Complaint.

79.     Defendants' ongoing releases of petroleum contamination and failure to prevent injury to Plaintiffs constitute negligence in violation of Colorado law,

80.     In Colorado, a *prima facie* cause of action for negligence "requires the proof of four elements: a plaintiff must show that first, the defendant owed a legal duty of care; second, the defendant breached that duty; third, the plaintiff was injured; and fourth, the defendant's breach caused that injury."  *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004).  Evidence of a leaking UST causing contamination to migrate to adjoining properties is sufficient to support a negligence claim.  *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 594 (Colo. App. 2007).

81.     It was foreseeable and, in fact, known by Defendants that leaks in the underground storage tanks and ongoing releases of petroleum from the Bradley Site would contaminate downgradient and adjacent properties, including the West End Properties, and would cause damage to downgradient properties and the use and enjoyment of such properties.

82.     Defendants have a duty to keep their property safe and prevent releases of petroleum from USTs at the Bradley Site and releases from their property to neighboring properties.  Defendants also have a duty to properly and timely investigate and remediate any releases that occur as required by state and federal law.  Defendants have chosen not to take appropriate measures to keep from contaminating Plaintiffs' properties.  Defendants have breached these duties by failing to contain releases, failing to stop ongoing migration of contamination to the West End Properties, and by failing to appropriately investigate and remediate contaminated soil and groundwater, which are the proximate cause of injuries incurred by Plaintiffs.

83.     Plaintiffs have incurred and continue to incur foreseeable injuries as a direct and proximate result of Defendants' breaches and resulting contamination.  Among those injuries, Plaintiffs have suffered a decrease in the value of their properties.  West End has been forced to expend a significant amount of money to properly characterize and dispose of contaminated soil, restore, remediate, and monitor the site, and to prepare and implement corrective and mitigation measures to make the property safe for workers and residents, and has incurred costs associated with delays in the development of the West End Properties.

### FIFTH CAUSE OF ACTION – NEGLIGENCE *PER SE*
### (Against All Defendants)

84.     Plaintiffs incorporate each allegation of the preceding paragraphs in this Complaint.

85.     Defendants' ongoing releases of petroleum contamination, failure to prevent migration of contamination to neighboring properties, failure to remediate the contamination, and failure to prevent injury to Plaintiffs constitute negligence *per se* in violation of federal and Colorado laws regarding USTs and requirements for the permitting and disposal of solid wastes.

86.     Colorado law governing underground storage tanks states that the "leakage of regulated substances from underground storage tanks constitutes a potential threat to the waters and the environment of the state of Colorado and presents a potential menace to the public health, safety, and welfare of the people of the state of Colorado . . . ."  C.R.S. § 8-20.5-201; *see also* C.R.S. § 30-20-100.5(1) (stating the purpose of solid waste management in the Solid Waste Act).

87.     Pursuant to Section 8-20.5-201 *et seq*., OPS's regulations are designed to protect the public "by preventing and mitigating the contamination of the subsurface soil, groundwater, and surface water which may result from leaking underground storage tanks."  C.R.S. § 8-20.5-201; *see also* 7 Colo. Code Regs. 1101-14:1-1; *see also* 6 Colo. Code Regs. 1007-2 pt. 1.

88.     Defendants' petroleum contamination and their failure to address the ongoing contamination violate Colorado's statutory and regulatory requirements regarding USTs and solid wastes and constitute a beach of their duty of care owed to Plaintiffs.

89.     Defendants' releases of petroleum have caused the ongoing contamination of the West End Properties causing injuries to Plaintiffs – injuries against which Colorado's statutes and regulations governing USTs and solid waste are specifically intended to prevent.  Plaintiffs—with properties adjacent to the Bradley Site—are within the class which Colorado's underground storage tank and solid waste laws were designed to protect.

90.     Defendants' breaches have caused damages to Plaintiffs which include, but are not limited to, (a) restricted use of the West End Properties, (b) delays in the development of the properties, (c) requiring remediation, restoration, mitigation, and monitoring, and (d) diminution in value of the properties.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief from this Court:

1.     An Order declaring that Stinker's and Joshnik's treatment, handling, storage, transportation, and/or disposal of petroleum caused and continues to cause violations of RCRA;

2.     An Order declaring that all Defendants' present treatment, handling, storage, transportation, and/or disposal of petroleum caused and continues to cause trespass, nuisance, negligence, and negligence *per se* under Colorado law;

3.     An Order enjoining Stinker and Joshnik by ordering them to immediately comply with all applicable RCRA regulations;

4.     An Order enjoining all Defendants to take affirmative measures that will ensure that all petroleum and/or petroleum byproducts will not escape the Bradley Site;

5.     An Order compelling Defendants Stinker and Joshnik to pay civil penalties to the United States Environmental Protection Agency for violations of RCRA;

6.     Damages with interest, in an amount to be proven at trial, that include but are not limited to: (1) diminution of the value of Plaintiffs' Property; (2) damages for loss of economic value of the Property; (3) stigma damages to the Property; (4) loss of business opportunities related to the Property; (5) economic loss from Plaintiffs' continued maintenance of the Property; (6) the cost of remediation, restoration,

mitigation, and monitoring the Property; and (7) costs incurred from delays in development of the West End Property;

7.      Exemplary damages pursuant to C.R.S. § 13-21-102;

8.      All costs of litigation, including reasonable attorney fees, as authorized by RCRA, 42 U.S.C. § 6972(e) and C.R.S. § 13-17-201;

9.      Such other and further relief for Plaintiffs as the Court deems just and equitable.

Respectfully submitted on June 23, 2020.

KAPLAN KIRSCH & ROCKWELL LLP

By:     /s/ Nathaniel H. Hunt
      Thomas A. Bloomfield (No. 35281)
      Nathaniel H. Hunt (No. 49259)
      Sara V. Mogharabi (No. 45299)
      Nicholas M. Clabbers (No. 48685)
      1675 Broadway, Suite 2300
      Denver, CO  80202
      (303) 825-7000 Phone
      (303) 825-7005 Facsimile
      tbloomfield@kaplankirsch.com
      nhunt@kaplankirsch.com
      smogharabi@kaplankirsch.com
      nclabbers@kaplankirsch.com

*Attorneys for West End 38, LLLP, and Olive Street Development Co., LLC*